**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| AARON J. SCHATZINGER, | CASE NO. 3:22-CV-00002-CEF |
| Petitioner, | JUDGE CHARLES E. FLEMING |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ANTHONY DAVIS,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Representing himself, Petitioner Aaron J. Schatzinger filed a petition for a writ of habeas

corpus. (ECF #1). The District Court has jurisdiction over the petition under 28 U.S.C. § 2254(a).

On June 1, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a

Report and Recommendation. (Non-document entry of June 1, 2022). Respondent Warden

Anthony Davis (hereinafter, the State) filed the Return of Writ (including the state court record)

on October 27, 2022. (ECF #10). Mr. Schatzinger filed a Traverse to Return of Writ on March 29,

2023 (ECF #13), and the State filed a Sur-Reply to the Traverse on March 31, 2023. (ECF #14).

---

[1]     Mr. Schatzinger's petition named Leon Hill, Warden, as the Respondent. "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004); *see also Orick v. Palmer*, No. 2:06-CV-13287, 2014 WL 4265775, at *4 (E.D. Mich. Aug. 28, 2014) ("The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated.") (citation omitted). According to the Ohio Inmate Locator, Mr. Schatzinger is housed at the Trumbull Correctional Institution. Anthony Davis is the warden of that facility, making him the proper party to respond to Mr. Schatzinger's petition. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Warden Davis is automatically substituted in place of former Warden Hill.

1

For the reasons discussed below, I recommend the District Court **DENY** any relief pursuant to the petition. I further recommend the District Court **DENY** a certificate of appealability for all grounds for relief.

PROCEDURAL HISTORY

A.      **Factual findings of the Court of Appeals**

The Ohio Court of Appeals, Third Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Schatzinger rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Third District determined:

> {¶2} On December 20, 2017, Sergeant Kevin Robison ("Sergeant Robison") of the Wyandot County Sheriff's Office was dispatched to Schatzinger's residence. When Sergeant Robison arrived, Schatzinger indicated that his girlfriend, Candace Schatzinger ("Candace") was nonresponsive. Sergeant Robison entered the residence and found Candace in her bedroom. He then determined that she was deceased and had "been gone for awhile [sic]." Sergeant Robison then secured the scene.

> {¶3} Sergeant Edwin G. Gottfried ("Sergeant Gottfried"), who works in the detective bureau at the Wyandot County Sheriff's Office, was notified of Candace's death at 5:45 A.M. Once at Schatzinger's residence, he noted that Candace "appeared to [have] be[en] in relatively good health" and suspected that she may have died of an overdose. Sergeant Gottfried "sat down with [Schatzinger] * * * to try to get some basic information." Sergeant Gottfried testified that Schatzinger was "crying, emotional," and "distraught * * *." Schatzinger told Sergeant Gottfried that Candace "was not a [drug] user, that she would not use drugs, [and] that he did not use drugs."

> {¶4} During their sweep of the bedroom, the police discovered a pill that appeared to be "Xanax or Alprazolam." The police also discovered a part of a green pill on the dresser in the bedroom. Because Candace had what appeared to be a Xanax pill next to her bed, the police initially believed that a local drug dealer, Mark Powers ("Powers"), may have been connected to this case. Powers was known to have been "using a pill press to stamp fentanyl and/or heroin to look identical to a Xanax Alprazolam pill." Powers had also been linked to several overdose deaths in the area and was Schatzinger's first cousin.

2

{¶5} During the course of their investigation, the police also found Candace and Schatzinger's cellular phones in their bedroom. After Schatzinger consented to a search of his cell phone, Sergeant Gottfried downloaded and examined its contents. While Schatzinger had previously stated that he and Candace were not drug users, his text messages indicated that he was not only using drugs but that he was also procuring various drugs for Candace and a number of other people. Further, Schatzinger's phone contained multiple pictures of a white powdery substance in a bag on a scale. When examining the content of Candace's phone, Sergeant Gottfried noted that Schatzinger was the only person who Candace "was having conversations with relevant to drugs or supplying her with pills, marijuana, and other stronger stuff, heroin * * *."

{¶6} On December 21, 2017, Sergeant Gottfried sat down for an interview ("the December 21 interview") with Schatzinger. During this interview, Sergeant Gottfried presented Schatzinger with copies of the pictures and text messages from his cell phone that indicated he was involved in drug trafficking. Schatzinger admitted that he had a drug addiction and indicated that he was using a gram to a gram and a half of heroin every couple of days. When presented with the pictures from his phone of heroin on scales, he stated that he was trafficking in drugs to support his addiction and travelled out of town around two or three days a week to obtain drugs from his supplier. He also admitted that he had been a "little" worried about getting some bad heroin.

{¶7} During this interview, Schatzinger stated that Candace's "habit" was "not that bad." He also indicated that Candace would do "a point or two at the most" of heroin periodically and that she began using heroin "only a couple of months" before her death. He admitted to supplying Candace with drugs but stated that he was "not sure if she got anything else from anybody else or not." Sergeant Gottfried then told Schatzinger that, based on the text messages in Candace's phone, "[s]he didn't act like she did [get drugs from another person]. I looked through her phone. Um, * * * anytime she needed something as simple as marijuana, she was looking to you." In response, Schatzinger said that he "d[id]n't know for sure" whether she got drugs from another dealer.

{¶8} Since the police suspected that Powers had perhaps supplied Schatzinger with a Xanax pill that was actually made of heroin and fentanyl, Sergeant Gottfried asked a number of questions about Powers. Schatzinger admitted that Powers supplied him with drugs on several occasions and was the source of the Xanax pills that he had obtained for Candace. He also admitted that he was aware that the product that Powers was selling had some issues.  Powers had indicated that he was cutting his drugs with other substances because of several overdoses that had happened.

3

Concerned by this information, Schatzinger indicated that he sought another source for some of his drugs.

{¶9} After discussing Powers, Schatzinger expressed remorse for his role in Candace's death and eventually stated that he felt responsible. Schatzinger then wrote a statement the reads as follows:

> **I'm not sure if this [the Xanax pills] is what killed my girl that I love so much. I wish I knew if your pills killed my girl. I will hate you [Powers] forever.**
>
> **I would buy those off you for 5 dollars. And now my girl is gone! I know now if I could take everything back, I would. I feel absolutely horrible. And for the rest of my life I'll be hurting.**

Sergeant Gottfried noted that, if the Xanax pills were not the cause of Candace's death, the heroin likely was. Schatzinger then stated that he did not think that Candace was becoming an addict and thought that he was "helping her out."

{¶10} While a large portion of this interview related to Schatzinger's relationship with Powers, the pills that were found in Candace's bedroom were subsequently submitted to the Ohio Bureau of Criminal Investigations ("BCI") for testing on January 9, 2018 and were found not to contain fentanyl. Instead, BCI determined that these pills were "just prescription Xanax * * *." For this reason, the police came to believe that these Xanax pills were not the cause of Candace's death. At trial, Sergeant Gottfried stated that Powers "was eliminated in this particular incident."

{¶11} Subsequently at trial, Schatzinger testified that he expressed remorse during his interview with Sergeant Gottfried because he thought, at that time, that the Xanax pills he obtained from Powers were the cause of Candace's death. He further testified that he no longer felt responsible for her death because the Xanax pills found in their bedroom were not found to contain fentanyl. However, Sergeant Gottfried noted at trial that, in his written statement, Schatzinger wrote that he "wish [he] knew *if* [Powers's] pills killed [Candace]." While he admitted that there appeared to be no connection between Powers and Candace's death, Sergeant Gottfried further noted that he discussed a wide range of illegal drugs during his interview with Schatzinger.

{¶12} Further, an autopsy was performed on Candace. The coroner concluded that Candace "died of acute combined drug intoxication, fentanyl, heroin, and alprazolam." The coroner further determined that the cause of death was "Accident–substance abuse." The coroner's report also indicated that Candace died within minutes to hours after the administration of the drugs, though the precise time of death could not be pinpointed with certainty.

{¶13} On April 11, 2018, Schatzinger was indicted on one count of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree; one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3), a felony of the second degree; one count of possession of heroin in violation of R.C. 2925.11(A), a felony of the fifth degree; and one count of permitting drug abuse in violation of R.C. 2925.13(B), a felony of the fifth degree. On September 30, 2019, the State filed a motion to dismiss the charge of possession of heroin in violation of R.C. 2925.11(A).

{¶14} On October 2 and 3, 2019, Schatzinger was tried on these charges. The State called Sergeant Robison, Sergeant Gottfried, and Candace's stepmother, Angela M. Bricely ("Bricely"), as witnesses. Dr. Robert B. Forney ("Dr. Forney") also testified about the results of Candace's autopsy. A recording of the December 21 interview between Sergeant Gottfried and Schatzinger was played for the jury. Copies of various text messages and photos from Candace and Schatzinger's phones were also introduced into evidence.

{¶15} At the close of the State's case-in-chief, the Defense made Crim.R. 29 motions for each of the charges against Schatzinger. The trial court denied these Crim.R. 29 motions. Schatzinger then testified in his own defense. On October 3, 2019, the jury found Schatzinger guilty of the offense of corrupting another with drugs and the offense of permitting drug abuse. However, the jury could not reach a verdict on the charge of involuntary manslaughter. On October 22, 2019, the trial court issued a judgment entry of sentencing.

(ECF #10-1 at PageID 302-08 (citations omitted); *see also State v. Schatzinger*, No. 16-20-04, 2021 WL 237217 (Ohio Ct. App. Jan. 25, 2021), *appeal not allowed*, 166 N.E.3d 1263 (Ohio 2021) (table)).

**B.     Trial court proceedings**

In April 2018, a Wyandot County Grand Jury returned a four-count indictment against Mr. Schatzinger, charging him with involuntary manslaughter, in violation of Ohio Revised Code § 2903.04(A); corrupting another with drugs, in violation of Revised Code § 2925.02(A)(3); possession of heroin, in violation of Revised Code § 2925.11(A); and permitting drug abuse, in

violation of Revised Code § 2925.02. (ECF #10-1 at PageID 72-74, 406). He was arraigned the same day, pled not guilty, and was released on bond. (*Id.* at PageID 75-76).

On September 30, 2019, the State moved to dismiss the possession-of-heroin charge. (*Id.* at PageID 79-80). The trial court granted the motion on October 1, 2019. (*Id.* at PageID 82).

A jury trial began on October 2, 2019 and concluded the next day. (*See* ECF #10-2, 10-3). The jury convicted Mr. Schatzinger of corrupting another with drugs and permitting drug abuse but could not return a unanimous verdict on the involuntary-manslaughter charge. (ECF #10-1 at PageID 93-94).

On October 21, 2019, Mr. Schatzinger appeared for sentencing. (*Id.* at PageID 96-102). His Criminal Rule 29 motion for judgment of acquittal was denied. (*Id.*). The trial court imposed a sentence of eight years' imprisonment on the corrupting-another-with-drugs charge and nine months' imprisonment on the permitting-drug-abuse charge, to be served concurrently. (*Id.*). On October 24, 2019, the trial court issued a *nunc pro tunc* entry correcting a clerical error in the original sentencing order. (*Id.* at PageID 104-09).

**C. Direct appeal**

On October 22, 2019, Mr. Schatzinger filed a Notice of Appeal (*Id.* at PageID 111), followed by an Amended Notice of Appeal on October 31, 2019 through new defense counsel (*Id.* at PageID 112). After briefing by both parties (*Id.* at PageID 127-68, 169-94), on May 21, 2020, the Third District dismissed Mr. Schatzinger's appeal. (*Id.* at PageID 196-201). It held the trial court's judgment entry was not a final appealable order because it did not "reflect final determination of the involuntary-manslaughter charge." (*Id.* at PageID 200). The Third District remanded the matter to the trial court "for execution of the judgment for costs." (*Id.* at PageID 201).

On May 20, 2020, the State moved to dismiss the involuntary-manslaughter charge (*Id.* at PageID 203-04), which the trial court granted the following day. (*Id* at PageID 206). On May 27, 2020, Mr. Schatzinger again appealed to the Third District. (*Id.* at PageID 208). His Brief of Appellant advanced four assignments of error, as follows:

1. Permitting drug abuse in violation of Ohio Revised Code §2925.13(B) is not supported by the evidence, and that the Defendant-Appellant knowingly permitted a felony drug abuse offense to take place in his residence and as such his conviction must be vacated.

2. The Defendant-Appellant's conviction for corruption of another with drugs in violation of Ohio Revised Code §2925.02(A)(3), was based on an inference upon an inference as to the possession and subsequent supplying by the Defendant-Appellant, controlled substance to the decedent which resulted in her death and such conviction must be vacated.

3. That neither of the convictions herein for permitting drug abuse or corrupting another with drugs, are supported by sufficient evidence and that the manifest weight of the evidence, directs that both convictions are improper and must be vacated.

4. That the conviction issued herein for corrupting another with drugs, is not supported by sufficient evidence and the conviction must be vacated.

(*Id.* at PageID 229). The State filed a Brief of Appellee (*Id.* at PageID 271-98), and on January 25, 2021, the Third District affirmed Mr. Schatzinger's convictions and sentence. (*Id.* at PageID 300-30).

On March 4, 2021, Mr. Schatzinger filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Supreme Court of Ohio. (*Id.* at PageID 333, 335-83). In his Memorandum in Support, he advanced two arguments, as follows:

**First Argument**

THE TRIAL COURT IMPROPERLY CONVICTED THE DEFENDANT IN VIOLATION OF R.C. §2925.13(b), PERMITTING DRUG ABUSE WHEN THERE WAS NO SHOWING OF A FELONY DRUG OFFENSE BY THE

OTHER OR THAT THE OFFENSE TOOK PLACE AT THE DEFENDANT'S RESIDENCE.

**Proposition of Law**

A conviction of permitting drug abuse under R.C. §2925.13(B), requires proof that a person occupying a residence knowingly allowed another to permit a felony drug offense. A conviction for such offense cannot be sustained without evidence of the felony abuse offense and where it took place.

**Second Argument**

THE TRIAL COURT IMPROPERLY CONVICTED THE DEFENDANT IN VIOLATION OF R.C. §2925.02(A)(3), CORRUPTING ANOTHER WITH DRUGS WITHOUT PROOF OF THE CAUSE ONLY BETWEEN THE DEFENDANT'S ACTION ARE AT THE ARM TO THE OTHER PERSON.

**Proposition of Law**

A conviction of corruption of another with drugs in violation of R.C. §2925.02(A)(3), requires a finding that the defendant either administered, furnished, induced or caused another to use a controlled substance and thereby caused serious physical harm to another or to become drug dependent. Such a conviction cannot be based upon an inference from the evidence taken from another inference from the evidence.

(*Id.* at PageID 336-37). The State filed a Memorandum in Response, opposing the grant of

jurisdiction. (*Id.* at PageID 385-92). On April 27, 2021, the Supreme Court of Ohio declined

jurisdiction. (*Id.* at PageID 394; *see also State v. Schatzinger*, 166 N.E.3d 1263 (Ohio 2021) (table)).

**FEDERAL HABEAS PETITION**

On January 3, 2022, representing himself, Mr. Schatzinger filed his habeas petition in this

Court. (ECF #1). In it, he advanced two grounds for relief, as follows:

**Ground One**: Insufficient evidence for permitting drug abuse in violation of the 5th and 14th Amendments.

**Supporting Facts**: The trial court improperly and unlawfully convicted this petitioner of violating R.C. 2925.13(B), permitting drug abuse when an essential element was not proven, either a felony drug offense by another or that the offense

8

took place at the petitioner's residence. One of which elements were required to have been proven but were not as constitutionally required thus violating due process and a fair trial.

**Ground Two**: Insufficient evidence to support a conviction for corrupting another with drugs violating 5th and 14th Amendments.

**Supporting Facts**: An essential element of a conviction under 2925.02(A)(3) is a finding that the petitioner either administered, furnished, induced or caused another to use a controlled substance and thereby caused serious physical harm to another or to become drug dependent. This essential element cannot be based upon an inference from evidence taken from another inference from the evidence as such violates this petitioner's constitutional rights to a fair trial and the due process of law.

(ECF #1 at PageID 5, 7) (cleaned up).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Schatzinger's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

9

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The state-court decision does not need to refer to relevant Supreme Court cases or even demonstrate awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court

10

decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable given the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

## DISCUSSION

Both of Mr. Schatzinger's grounds for relief challenge the sufficiency of the evidence supporting his convictions for permitting drug abuse and corrupting another with drugs. The State responds that neither of Mr. Schatzinger's claims warrant habeas relief. (ECF #10 at PageID 50, 58). I agree with the State.

**General Principles of Sufficiency-of-the-Evidence Review.** The due process clause requires the State prove every fact necessary to constitute the charged offense beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 363-64 (1970). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could

12

have found proof of guilt beyond a reasonable doubt. *Id.* at 324. The Sixth Circuit has aptly described this standard as imposing a "nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quotation omitted).

Furthermore, the State does not have an "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt." *Jackson*, 443 U.S. at 326. Under this standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* The Supreme Court teaches that "the *Jackson* inquiry does not focus on whether the trier of fact made a correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

On federal habeas review of a claim challenging the sufficiency of the evidence, reviewing courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the federal court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618 (6th Cir. 1993)). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.*

The second layer of deference required under AEDPA extends to the state appellate court's determination so long as it is not unreasonable. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.

13

2008); *see also* 28 U.S.C. § 2254(d)(2). The reviewing district court gives deference to the trier of

fact's verdict and to the state court's consideration of the trier of fact's verdict. *Davis*, 658 F.3d at

531. Additionally, as described above, comity principles require federal courts to defer to a state's

judgment on issues of state substantive and procedural law, *see Murray*, 477 U.S. at 491, and

federal courts must accept a state court's interpretation of state law and its rules of practice, *Duffel*,

785 F.2d at 133. The state court's interpretation of state law is binding on a federal court sitting in

habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

**Mr. Schatzinger's Conviction for Permitting Drug Abuse.** Mr. Schatzinger's direct appeal

to the Third District challenged the sufficiency of the evidence underlying his conviction for

permitting drug abuse. The Third District rejected this challenge, explaining as follows:

*First Assignment of Error*

{¶17} Schatzinger argues that his conviction for permitting drug abuse is not
supported by sufficient evidence.

Legal Standard

{¶18} A challenge to the sufficiency of the evidence supporting a conviction "is a
question of law and a 'test of adequacy rather than credibility or weight of the
evidence.'" "The sufficiency-of-the-evidence analysis addresses the question of
whether adequate evidence was produced for the case to be considered by the trier
of fact and, thus, whether the evidence was 'legally sufficient to support the verdict *
* *.' " On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the
> prosecution, any rational trier of fact could have found that the essential
> elements of the crime were proven beyond a reasonable doubt.**

{¶19} To prove the offense of permitting drug abuse in violation of R.C. 2925.13(B),
the State must establish that the defendant "[1] is the owner, lessee, or occupant, or
who has custody, control, or supervision, of premises or real estate, including vacant
land" and "[2] knowingly [3] permit[ted] the premises or real estate, including vacant
land, to be used for the commission of a felony drug abuse offense [4] by another
person." "A person acts knowingly, regardless of purpose, when the person is aware

14

that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶20} In proving a conviction, "[i]t is a well-settled rule of law that direct evidence is not necessary for the trier of fact to make a finding; circumstantial evidence has the same probative value."

> **Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Circumstantial evidence is "evidence based on inference and not on personal knowledge or observation."**

 "A conviction can be sustained based on circumstantial evidence alone."

Legal Analysis

{¶21} Schatzinger does not challenge the first element of this offense on appeal. Instead, Schatzinger argues that the State failed to establish that Candace was committing a felony drug offense in the residence. He also argues that "there is not a reasonable basis" to believe that Schatzinger had "knowledge that the decedent was committing a felony drug offense in the home." We will limit our analysis to the arguments that the appellant has raised on appeal.

{¶22} At trial, the State introduced a number of text messages that were exchanged between Schatzinger and Candace. On October 24, 2017, the following exchange occurred:

> **[Schatzinger]: Does Steff like the white?**
>
> **[Candace]: I'm not sure if she dose [sic] that any more or not. She's supposed to stop by today and pay me for those jeans I'll ask her if you want me to?**
>
> **[Schatzinger]: Yeah ask I guess we have some to get rid**
>
> **[Candace]: You bringing me any home wink wink wink * * ***

During the December 21 interview, Schatzinger explained that "white" referred to cocaine. On November 2, 2017, the following exchange occurred:

> **[Candace:] Grab me one please...**
>
> **[Candace:] Grab me one please...**

15

> **[Schatzinger:] F\*\*k o [sic] forgot everything**
>
> **[Candace:] What?**

Schatzinger later explained to Sergeant Gottfried that Candace was asking him to get some Percocet for her in these texts.

{¶23} On November 17, 2017, Candace and Schatzinger were texting about whether she should submit to a drug test for a job she was about to start:

> **[Candace:] She said people they're [sic] have used it and passed [the drug test]**
>
> **[Schatzinger:] I would be scared to take one H,coke,pills and pot!! There [sic] bound to find something it's up too you though**

Sergeant Gottfried asked Schatzinger if this meant that he was advising Candace not to take the drug test because she would test positive for heroin, cocaine, pills, and marijuana. Schatzinger replied, "probably."

{¶24} In another text, Candace stated, "I've been talking [sic] stool softner. It's too late to take a laxative I'll be up all night s\*\*\*\*\*\*g." At the December 21 interview, Sergeant Gottfried noted that heroin causes constipation. He stated that this was an indication that Candace was, by this point, using drugs fairly regularly. Further, Sergeant Gottfried testified at trial that constipation is a common symptom "for someone that is taking a lot of medications and/or is on opiates."

{¶25} On November 19, 2017, the following exchange occurred between Candace and Schatzinger:

> **[Candace:] I'm still really tired today. \* \* \***
>
> **[Schatzinger:] That stuff does that lol**
>
> **[Candace:] I've only done one *more* since you left**
>
> **[Schatzinger:] Oh what you found *on my dresser***
>
> **[Candace:] Probably not sure one of the lil pieces I got from you**

(Emphasis added.) During the December 21 interview, Sergeant Gottfried noted that this language seemed to indicate that Candace had done some drugs at home while Schatzinger was present and before he had left. In response to Gottfried's statement,

16

Schatzinger indicated that he could not remember what drug had been on his dresser on that day.

{¶26} On December 3, 2017, Candace texted Schatzinger about what she had seen two of her children, J.J. and K.S., do earlier:

> [Candace:] Umm so JJ told [K.S.] that we crush pills and snort then [sic] u our nose and showed her how we do it ... * * *

> [Candace:] He showed her with carrots

> [Schatzinger:] Omg I hope you had a talk with him and tell him we don't do that omg.

> [Candace:] Auto-Reply I'm driving right now – I'll get back to you later.

> [Schatzinger:] Make something up idk what tell her medicine for somebody that can't swallow

> [Schatzinger:] Omg that's not good what if he does that at school

> [Schatzinger:] *We* can't do nothing *around him* anymore

During the December 21 interview, Sergeant Gottfried noted that the children appear to have seen them use heroin. Schatzinger said, "I don't think *we* did it around the kids. It accidentally happened, you know what I mean." (Emphasis added.) Sergeant Gottfried then noted that this text appeared to indicate that their children were aware of their drug usage.

{¶27} On December 4, 2017, Candace texted Schatzinger this series of requests:

> [Candace:] Grab me some smokes please * * *

> [Candace:] My back and my feet are killing me wish you could *grab me a p* for tomorrow * * *

> [Candace:] Don't forget my smokes your going to have to get them in town everything is closed * * *

(Emphasis added.)

{¶28} Sergeant Gottfried also asked about another text where Candace requested a couple of grams from him. However, Schatzinger told him that Candace was not talking about heroin and was asking for marijuana. There was another text exchange

17

from October where Candace reported that she "only had about a half left." In response, Schatzinger replied, "Sweet. Let's do it when *I get home* and I'll grab a couple and do one when I get back." (Emphasis added.) Schatzinger told Sergeant Gottfried that this exchange was about Percocet.

{¶29} During the December 21 interview, Schatzinger admitted that he was aware of Candace's heroin use, though he stated that her habit was "not that bad." He stated that Candace "wasn't really like hooked on anything, but just every now and then she would try—try stuff, you know." Sergeant Gottfried stated that, as he examined Candace's text messages, he noticed that she progressed from drugs like marijuana to harder drugs like heroin. Schatzinger indicated that Candace had started using heroin "only a couple of months" before she died. He also affirmed that Candace would do "a point or two at the most" when she used it. Sergeant Gottfried noted that her text messages confirmed that she started using heroin in late October or early November of 2017. Schatzinger stated that he could not remember the last time that he saw her use drugs.

{¶30} Further, Candace was found deceased in her bedroom as the result of a drug overdose. Dr. Forney testified that, based on the autopsy report, Candace likely died "within one to two hours max" after she ingested the fatal drug cocktail. He then added that she "[p]robably [died within] less than an hour." Sergeant Gottfried also recovered two straws from the bedroom that were suspected to have traces of fentanyl on them. However, he testified that the straws were never tested to confirm this suspicion.

{¶31} In this case, Schatzinger admitted that he knew Candace had been using heroin for one or two months before her death. The text messages admitted into evidence indicate that Schatzinger also knew that Candace had been using heroin, cocaine, and Percocet. Further, the text messages also indicated that Candace was doing illegal drugs in her home. During the December 21 interview, Sergeant Gottfried read a text message that indicated Schatzinger had planned to do drugs with Candace "when [he] got home." Based on the text messages admitted at trial, their children also appear to have been aware of Candace and Schatzinger's use of illegal drugs. Finally, Candace also passed away in their bedroom from a heroin and fentanyl induced overdose. We conclude that, from the facts presented at trial, a jury could infer that Schatzinger knew that Candace was committing a felony drug offense in his residence.

{¶32} After reviewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State had produced some evidence to substantiate the essential elements that Schatzinger has challenged on appeal. For this reason, his conviction for the crime of permitting drug abuse is not unsupported by sufficient evidence as alleged. Thus, Schatzinger's first assignment of error is overruled.

18

*State v. Schatzinger*, 2021 WL 237217, at \*4-7 (citations omitted).

In his petition, Mr. Schatzinger asserts his conviction for permitting drug abuse was not supported by sufficient evidence because "an essential element was not proven, either a felony drug offense by another or that the offense took place at the petitioner's residence." (ECF #1 at PageID 5). In his Traverse, he argues he and the victim "had a 'split/duel [*sic*] lease with an equal share of the residence, meaning, no party had control over the other resident outside of an eviction enforced by the landlord or the court of common pleas," citing Revised Code § 5321.05. (ECF #13 at PageID 737). Mr. Schatzinger did not advance this specific argument before the Third District; as such, the argument is procedurally defaulted before this Court.[2] The remainder of his argument for Ground One is cognizable but after applying the two layers of deference described above, I conclude the Third District's application of state law and its review of the evidence admitted at trial withstands scrutiny. Mr. Schatzinger does not direct the Court to any clearly established federal law that is violated by his conviction for permitting drug abuse.

The role of a habeas court is neither to re-try a case nor "to upset state court judgments by substituting [its own] judgments or opinions." *Neace v. Edwards*, No. 02-4079, 2005 WL 1059274,

---

[2]     In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle*, 456 U.S. at 125 n.28. Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

To overcome this procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). Mr. Schatzinger makes no argument or showing as to either; therefore, procedural default still applies.

19

at *6 (6th Cir. May 6, 2005) (citing *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). Additionally, a federal habeas court is not "an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Group v. Robinson*, 132 F. Supp. 3d 954, 959 (N.D. Ohio 2015) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). Federal district courts do not operate as another level of "appellate tribunals to review alleged errors in state court judgments of conviction." *Baker v. Reid*, 482 F. Supp. 470, 471 (S.D. N.Y. 1979). Rather, the only question this federal habeas court may decide is whether the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *Williams*, 529 U.S. at 412.

Mr. Schatzinger has not met this high standard as concerns his conviction for permitting drug abuse. Therefore, I recommend that the District Court **DENY** any relief as to Ground One of his habeas petition.

**Mr. Schatzinger's Conviction for Corrupting Another with Drugs.** Mr. Schatzinger's direct appeal to the Third District also challenged the sufficiency of the evidence underlying his conviction for corrupting another with drugs. The Third District similarly rejected this challenge, explaining as follows:

*Fourth Assignment of Error*

{¶33} Schatzinger argues that his conviction for corrupting another with drugs is not supported by sufficient evidence.

Legal Standard

{¶34} We herein reincorporate the sufficiency-of-the-evidence standard set forth under the first assignment of error. To prove the offense of corrupting another with drugs in violation of R.C. 2925.02(A)(3), the State must establish that the defendant "[1] knowingly * * * [2] [b]y any means, administer[ed] or furnish[ed] to another * * * [3] a controlled substance, and [4] thereby cause[d] serious physical harm to the other person, or cause[d] the other person to become drug dependent." "A person acts

20

knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

Legal Analysis

{¶35} While Schatzinger concedes that death would constitute serious physical harm, he argues that the State did not present any direct evidence that he "furnished" Candace with the fatal dosage of heroin and fentanyl that caused her death. However, the State could also establish this offense by proving that Schatzinger "knowingly * * * furnish[ed] a controlled substance and * * * caused [Candace] * * * to become drug dependent."

{¶36} At trial, the State introduced an abundance of evidence that established that Schatzinger supplied Candace with illegal drugs. During the December 21 interview, the following exchange occurred:

> **[Sergeant Gottfried:] Did she have a drug dealer or did she pretty much get the stuff that you brought home?**
>
> **[Schatzinger:] I'm not sure if she got anything else from anybody else or not.**
>
> **[Sergeant Gottfried:] She doesn't act like she did. I looked through her phone. Um, did not see anytime she needed something as simple as marijuana she was looking to you. Does that sound pretty accurate?**
>
> **[Schatzinger:] I don't know for sure. I can't say one hundred percent.**

Schatzinger further admitted that he supplied Candace with illegal drugs, ranging from marijuana to Percocet. He also admitted to obtaining Xanax from Powers at Candace's request.

{¶37} However, Sergeant Gottfried testified that he had reviewed Candace's text messages and that Schatzinger was the only person from whom she requested illegal drugs. At trial, he stated the following:

> **[I]nitially we looked at different avenues. We had heard one individual was possibly supplying Aaron Schatzinger and Candace, which was a Travis Danner, who we are familiar with. So I looked in [Candace's] phone for conversations with Travis Danner, along with numerous other conversation threads she had still currently on her cell phone. And I did not observe any real drug content that would suggest getting drugs from any of those individuals, until I came to the thread with Aaron Schatzinger.**

He further testified that the police investigation did not uncover any other people who supplied Candace with drugs. At various points, the texts between Candace and

21

Schatzinger mention heroin, cocaine, Percocet, and marijuana. She specifically asked Schatzinger for Percocet and marijuana in these text messages.

{¶38} Further, the text messages at trial indicate that Schatzinger was trafficking in heroin. He had multiple pictures on his phone of heroin on scales. Schatzinger told Sergeant Gottfried that he was trafficking in drugs primarily to support his heroin addiction. He further admitted that he was using one to one and a half grams of heroin every couple of days. He indicated that each gram of heroin cost him $100.00 to $120.00. For this reason, he stated that he was not making much money from selling heroin to others.

{¶39} During the December 21 interview, Schatzinger admitted that he was a "little" concerned about getting some bad heroin in the process of trafficking these drugs. The prosecution also introduced several text messages from several people who had purchased heroin from Schatzinger. One of these contacts informed Schatzinger the product he sold caused him to "fade out bad." Another contact reported that the product was "burning [his] nose bad." Schatzinger told Sergeant Gottfried that, if he could go back, he would not have sold these drugs to people.

{¶40} However, after receiving texts indicating that the drugs he was selling were too strong, he received texts from his contacts with reports the drugs he was trafficking were not strong enough. Schatzinger was, at this time, obtaining drugs from Powers. He texted Powers about this issue. Powers replied the drugs were not as strong because he was cutting them "because all the ods." During the December 17 interview, Schatzinger stated that this concerned him and that he began to get drugs from other sources. However, Schatzinger still obtained the Xanax for Candace from Powers even though he was aware that Powers was selling dangerous substances that had caused overdoses.

{¶41} During the December 21 interview, Schatzinger stated that he did not think that Candace was becoming an addict and that he believed that he was helping her out by providing her with these drugs. At trial, Sergeant Gottfried testified about the progression of Candace's drug usage based on the text messages on her phone.

> **[Sergeant Gottfried:] It was a long history of text messages dating back several months of conversations between Aaron Schatzinger and Candace Schatzinger. And through those conversations, it was very evident to me, whose dealt with the epidemic, and dealt with numerous drug investigations, that there was a process where an individual who was drug dependent. It's not an immediate thing. It's almost a gradual process, where someone may start with pills, and then get deeper into pills, maybe stronger pills, and then moving to heroin, and then stronger heroin. It was almost a process that we could see of a telling tale of the last few months of Candace Schatzinger's life, which started out with getting marijuana, getting pills, moving towards heroin, stronger heroin, doing more, needing**

> it, becoming constipated * * * which is also commonly—for someone that is taking a lot of medications and/or is on opiates. So once we saw this, I started to see where the only person that she was having conversations with relevant to drugs or supplying her with pills, marijuana, and other stronger stuff, heroin, was Aaron Schatzinger. If she needed something, her conversation thread indicated that she was contacting him, Aaron Schatzinger, to get her this.

Sergeant Gottfried had also explained to Schatzinger that the constipation referred to in the text messages would indicate that Candace was engaging in more regular heroin use by the middle of November.

{¶42} At trial, Bricely testified that Candace lost weight in the months before she died. She also testified that Candace had become more withdrawn over time and less social. Bricely stated that she was unaware that Candace had been using illegal drugs. However, she testified that the family had planned to have an intervention after Christmas in 2017 because they were concerned about Candace and wanted to find out what was happening with her.

{¶43} During the December 21 interview, Schatzinger indicated that Candace had progressed to heroin one or two months before her death. Sergeant Gottfried noted that this statement was consistent with the text messages. Schatzinger affirmed that Candace was using about "a point or two" but that her habit was not as bad as his had been. He stated that he could not remember the last time that he saw her using heroin. Schatzinger also indicated that Candace began losing weight before she started using the harder drugs.

{¶44} In this case, the State provided evidence that Schatzinger furnished Candace with a variety of controlled substances over an extended period of time. Further, the prosecution provided evidence that Candace became progressively more dependent on stronger and stronger drugs, moving from marijuana to pills to heroin over the course of several months. After reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude that Schatzinger committed the offense of corrupting another with drugs. Since the State provided some evidence for each of the essential elements of this crime, this conviction is supported by sufficient evidence. Thus, Schatzinger's fourth assignment of error is overruled.

*State v. Schatzinger*, 2021 WL 237217, at *7-9 (citations omitted).

Before this Court, Mr. Schatzinger advances the same argument he did before the Third

District – that his conviction for corrupting another with drugs was not supported by sufficient

evidence because there was no proof that he "administered, furnished, induced or caused another

23

to use a controlled substance and therefore caused serious physical harm to another or to become drug dependent." (ECF #1 at PageID 7; *see also* ECF #10-1 at PageID 246-47). He expands the argument before this Court, arguing that the State improperly received the benefit of an inference based on an inference, which he says runs afoul of state law including *State v. Nevius*, 71 N.E.2d 258 (Ohio 1947), and *State v. Maynard*, No. 11AP-697, 2012 WL 2463966 (Ohio Ct. App. June 28, 2013). (ECF #13 at PageID 738-40). He also cites the Tenth Circuit's decision in *United States v. Valadez-Gallegos*, 162 F.3d 1256 (10th Cir. 1998), which stated in part: "[W]e may not uphold a conviction obtained by piling inference on inference." *Id.* at 1262 (citing *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995)).

Even if Mr. Schatzinger were correct that federal law prohibited a conviction based on an inference drawn from another inference – an issue as to which I express no opinion – any such rule was not broken here. The Third District's decision upholding Mr. Schatzinger's conviction for corrupting another with drugs provided a detailed analysis of the evidence adduced at trial from which it found the State proved both that Mr. Schatzinger "furnished [the victim] with a variety of controlled substances over an extended period of time" and that as a result, the victim "became progressively more dependent on stronger and stronger drugs, moving from marijuana to pills to heroin over the course of several months." *State v. Schatzinger*, 2021 WL 237217, at *9. These conclusions from the evidence, reached without having to draw an inference based on another inference, establish each of the essential elements of the offense of corrupting another with drugs under Ohio law, and Mr. Schatzinger has not cited any federal authority to the contrary.

In point of fact, the Third District addressed this same argument in rejecting Mr. Schatzinger's second assignment of error, writing as follows:

24

*Second Assignment of Error*

{¶45} Schatzinger argues that his conviction for corrupting another with drugs is based upon an inference upon an inference.

Legal Standard

{¶46} "An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury." However, "a given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another but each is drawn separately from the same facts." Thus, "a trier of fact may draw multiple inferences from the same set of facts."

Legal Analysis

{¶47} Schatzinger argues that his conviction for corrupting another with drugs is based on an impermissible inference on an inference. Specifically, he asserts that the jury inferred that he had possession of the fatal heroin compound and that he furnished this compound to Candace. However, the State did not have to establish that Schatzinger furnished Candace with the fatal dosage of heroin in order to prove that he committed the offense of corrupting another with drugs. The State could also establish a conviction for this offense by proving that he caused Candace to become drug dependent.

{¶48} At trial, the State introduced evidence that established that Schatzinger was an addict who regularly used heroin; that Schatzinger was trafficking in heroin to support his habit; that Schatzinger had seen Candace use heroin, though he could not recall the last occasion that he saw her ingest this drug; that Schatzinger had supplied Candace with the controlled substances she had requested from him over an extended period of time; and that Schatzinger had procured marijuana, Percocet, and Xanax for her. From these facts, a jury could infer that Schatzinger had also furnished Candace with heroin. This conclusion did not require the jury to make an inference on an inference.

{¶49} Further, the State also introduced evidence that established that Schatzinger supplied Candace with various types of drugs over an extended period of time; that Candace progressed from marijuana to pills to harder drugs, such as heroin, during this timeframe; that Candace had only progressed to heroin a few months before she died; and that Candace had a heroin "habit," though her habit was not as bad as Schatzinger's habit. From these facts a jury could infer that Schatzinger had, by furnishing her these various kinds of controlled substances, caused her to form a drug dependency that progressed over time from marijuana to pills to heroin.

25

{¶50} These conclusions do require inferences. However, these conclusions do not require inferences upon inferences. From the evidence introduced at trial, a jury could make permissible inferences that support a conviction for corrupting another with drugs. For this reason, Schatzinger's second assignment of error is overruled.

*State v. Schatzinger*, 2021 WL 237217, at *9-10 (citations omitted).

For the foregoing reasons, I recommend the District Court **DENY** relief as to Ground Two of Mr. Schatzinger's habeas petition.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Schatzinger has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims

26

of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error.

Therefore, I recommend the District Court **DENY** Mr. Schatzinger a COA as to either ground of

his petition.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DENY** any relief based on Mr.

Schatzinger's petition. I also recommend the District Court **DENY** a certificate of appealability as

to all grounds for relief.

Dated: May 29, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**Objections, Review, and Appeal**

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl***, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.***, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green***, No. 1:17-CV-00186, 2018**

27

WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).